# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### RICHMOND DIVISION

SYNOPSYS, INC.,

        Plaintiff,

  v.

RISK BASED SECURITY, INC.,

        Defendant.

Case No. 3:21-cv-00252-JAG

## OPPOSITION BRIEF OF SYNOPSYS, INC.
## TO DEFENDANT'S MOTION TO STAY

Krista S. Schwartz (admitted PHV)
Patrick T. Michael (admitted PHV)
3 Embarcadero Center, Suite 1500
San Francisco, CA 94111
T: 415-374-2300
F: 415-374-2499
krista.schwartz@hoganlovells.com
patrick.michael@hoganlovells.com

N. Thomas Connally, VSB No. 36318
Christopher T. Pickens, VSB No. 75307
HOGAN LOVELLS US LLP
8350 Broad St., 17th Floor
Tysons, VA 22102
T: 703-610-6100
F: 703-610-6200
tom.connally@hoganlovells.com
christopher.pickens@hoganlovells.com

*Counsel for Plaintiff Synopsys, Inc.*

Dated: June 1, 2021

## TABLE OF CONTENTS

INTRODUCTION ...................................................................................................................1

BACKGROUND ....................................................................................................................3

    I.      Synopsys Is a Market Leader in Open Source Software Security. .........................3

    II.     RBS's Cease and Desist Letter ..............................................................................4

    III.    The MA Action Between RBS and Black Duck.....................................................5

ARGUMENT .........................................................................................................................6

    I.      Abstention Is Not Appropriate Under *Colorado River*..........................................7

          A.     *Colorado River* Applies Because This Is a "Mixed" Case. ......................7

          B.     Abstention Is Not Appropriate Because There Are No Exceptional
                 Circumstances Here. ..................................................................................9

               1.     This Case and the MA Action Are Not "Parallel."......................10

               2.     Even if this Case and the MA Action Are Deemed "Parallel," the
                     *Colorado River* Factors Weigh Heavily Against a Stay...............13

    II.     A Stay Is Not Appropriate Even Under the *Brillhart*/*Wilton* Standard. ................17

CONCLUSION.....................................................................................................................20

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Allstate Ins. Co. v. Hechinger Co.*,
   982 F. Supp. 1169 (E.D. Va. 1997) ........................................................7

*Apple Inc. v. PsyStar Corp.*,
   No. C 08–3251 WHA, 2009 WL 303046 (N.D. Cal. Feb. 6, 2009) ....................8, 9

*Brillhart v. Excess Ins. Co.*,
   316 U.S. 491 (1942) ...............................................................6, 17

*Brown-Thomas v. Hynie*,
   441 F. Supp. 3d 180 (D.S.C. 2019) ................................................12, 17

*Centennial Life Ins. Co. v. Poston*,
   88 F.3d 255 (4th Cir. 1996) ...........................................................6

*Chase Brexton Health Servs., Inc. v. Maryland*,
   411 F.3d 457 (4th Cir. 2005) .........................................................15

*Colorado River Water Conservation Dist. v. United States*,
   424 U.S. 800 (1976) ............................................................ *passim*

*Cottrell v. Duke*,
   737 F.3d 1238 (8th Cir. 2013) .........................................................8

*Davenport v. Robert H. Davenport, D.D.S., M.S., P.A.*,
   146 F. Supp. 2d 770 (M.D.N.C. 2001) ................................................18

*Elec. Data Sys. Corp. v. Computer Assocs. Int'l, Inc.*,
   802 F. Supp. 1463 (N.D. Tex. 1992) ..................................................8

*Extra Storage Space, LLC v. Maisel-Hollins Dev., Co.*,
   527 F. Supp. 2d 462 (D. Md. 2007) ...............................................12, 17

*Gannett Co. v. Clark Const. Grp.*,
   286 F.3d 737 (4th Cir. 2002) ....................................................15, 17

*Gordon v. Luksch*,
   887 F.2d 496 (4th Cir.1989) .........................................................14

*Great Am. Ins. Co. v. Gross*,
   468 F.3d 199 (4th Cir. 2006) ..............................................6, 14, 18, 19

*Lasercomb Am., Inc. v. Reynolds*,
  911 F.2d 970 (4th Cir. 1990) ....................................................................................8

*Lufthansa Sys. Infratec GmbH v. Wi-SKY Inflight, Inc.*,
  2011 WL 862314 (March 9, 2011 E.D.Va.) ...............................................6, 7, 11, 12

*Midwest Tape, LL v. Recorded Books, LLC*,
  No. 3:09 CV 2176, 2010 WL 1258101 (N.D. Ohio March 26, 2010) ......................8

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
  460 U.S. 1 (1983) .........................................................................................7, 8, 16

*New Beckley Mining Corp. v. Int'l Union, United Mine Workers of Am.*,
  946 F.2d 1072 (4th Cir. 1991) .............................................................................11, 13

*Practice Mgmt. Info. Corp. v. Am. Med. Ass'n*,
  121 F.3d 516 (9th Cir. 1997), *amended*, 133 F.3d 1140 (9th Cir. 1998)....................9

*Villa Marina Yacht Sales, Inc. v. Hatteras Yachts*,
  915 F.2d 7 (1st Cir.1990)........................................................................................14

*Volvo Constr. Equip. N.A., Inc. v. CLM Equip. Co.*,
  386 F.3d 581 (4th Cir. 2004) ...................................................................................18

*VonRosenberg v. Lawrence*,
  781 F.3d 731 (4th Cir. 2015) ................................................................................6, 8

*VonRosenberg v. Lawrence*,
  849 F.3d 163 (4th Cir. 2017) ............................................................................ *passim*

*Wilton v. Seven Falls Co.*,
  515 U.S. 277 (1995)..............................................................................................6, 17

*Zurich Am. Ins. Co. v. Pub. Storage*,
  697 F. Supp. 2d 640 (E.D. Va. 2010) ......................................................................7

**Statutes**

17 U.S.C. § 101 .............................................................................................................16

18 U.S.C. §§ 1831–39...........................................................................1, 4, 5, 12, 17

## INTRODUCTION

From its Motion to Stay (the "Motion"), the Court would hardly know that on April 5, 2021, Defendant Risk Based Security, Inc. ("RBS") sent Plaintiff Synopsys, Inc. ("Synopsys") a cease and desist letter threatening to file a lawsuit against Synopsys (the "Cease and Desist Letter"). It is that Cease and Desist Letter that gives rise to this lawsuit. Yet RBS's Motion barely mentions it. Instead, RBS focuses in its Motion almost entirely on a Massachusetts state court action (the "MA Action") that RBS filed years ago against a non-party to this suit, Black Duck Software, Inc. ("Black Duck"). That case asserts different claims, under different law, against a different party, and challenges different conduct than this case. The differences between the two cases are glaring, and the Court need not look any further than RBS's own conduct to know the cases are distinct: if RBS's threatened claims against Synopsys were subsumed by the MA Action, or if RBS could add the threatened claims to the MA Action, then there would have been no need to send the Cease and Desist Letter and threaten a new lawsuit. That RBS did proves that this case is distinct from the MA Action, involves distinct issues that cannot be adjudicated in the MA Action, and should not be stayed or subject to abstention as RBS requests.

In the Cease and Desist Letter, RBS threatens to file claims against Synopsys for copyright infringement under federal law, trade secret misappropriation under both the federal Defend Trade Secrets Act and Virginia Trade Secrets Act, and tortious interference under Virginia law. Because federal courts have exclusive jurisdiction over claims of copyright infringement, RBS could not possibly have filed these claims in the MA Action, and RBS was, necessarily, threatening a separate federal lawsuit against Synopsys. In response to the Cease and Desist Letter, Synopsys promptly sought relief in this Court. Synopsys' complaint asserts (i) as to the threatened claim for copyright infringement, an affirmative claim for copyright misuse and a claim for declaratory judgement that it is not infringing any RBS copyright, (ii) as to the threatened claims of trade secret

misappropriation, a claim for declaratory judgment that it is not misappropriating any RBS trade secrets, and (iii) as to the threatened claim for tortious interference, a claim for declaratory judgment that it is not tortiously interfering with any RBS contract or business expectancy.

Having threatened to file a lawsuit against Synopsys, RBS's Motion is a transparent attempt to prevent Synopsys from getting clarity on the rights and conduct RBS is challenging. RBS's requested stay would put Synopsys in an untenable position: it either needs to sit idly and refrain from the conduct challenged by RBS until after the resolution of the MA Action, which may be years away, or perform that conduct under the threat of new litigation. The Declaratory Judgment Act was enacted specifically for situations like this so that parties can seek legal clarity of their rights and need not proceed in the face of such uncertainty.

RBS's requested stay is contrary to the law and should be denied for multiple reasons. First, RBS asks the Court to apply the wrong standard. The standard set out by the United States Supreme Court in *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976), applies in cases, like this one, where there are not exclusively claims for declaratory relief. RBS attempts to avoid *Colorado River* by asserting that Synopsys' affirmative claim for copyright misuse is somehow inappropriate, but it is not. RBS did not move to dismiss the copyright misuse claim—it remains squarely in the case—so this is a mixed case and *Colorado River* applies. Second, a pre-requisite for abstention under *Colorado River* is that there is actually a "parallel proceeding" in state court. Here, there is no such proceeding because the MA Action and this case involve different parties, different conduct, and different claims, including claims here over which there is exclusive federal jurisdiction. Third, even if the MA Action was a parallel proceeding, the *Colorado River* factors weigh heavily against a stay. Finally, in the event *Colorado River* does not apply, the Court's analysis for declining jurisdiction would be governed by the factors set out by

the Fourth Circuit in *Nautilus Ins. Co. v. Winchester Homes, Inc.*, 15 F.3d 371 (4th Cir.1994), which RBS fails to address. Those factors also weigh heavily against a stay. In sum, the Motion should be denied, and this Court should not abstain from exercising its jurisdiction over this case.

## BACKGROUND

### I.    Synopsys Is a Market Leader in Open Source Software Security.

Synopsys is a market leader in open source software security, providing solutions to customers to help them identify and manage open source software components in their software. Dkt. 1 at ¶¶ 13–15. Open source software is software with source code that is available to anyone to inspect, modify, and enhance, and it is widely used as the foundation for software applications across every industry. *Id.* at ¶ 13. Because it is so widely used, it is a prime target for hackers, as one open-source vulnerability can give hackers access to thousands of applications. *Id.* at ¶ 15.

Synopsys has strived to improve the security posture of open source software, providing the open source community testing tools to enable detection and identification of software vulnerabilities. Synopsys has responsibly disclosed vulnerabilities it discovered in its own research through the Computer Vulnerabilities and Exposures Program ("CVE Program"), which allows them to be remediated by other interested parties. *Id.* at ¶ 35.

Under the CVE Program, only CVE Numbering Authorities ("CNAs") are allowed to assign unique identifier numbers to vulnerabilities and publish information about the vulnerabilities in the CVE public catalogs. *Id.* at ¶ 36. As a result of its good work for the open source software community, Synopsys was named a CNA by the CVE Program in March 2021. *Id.* at ¶ 37. This is a notable distinction in the software vulnerability market and valuable to Synopsys in dealing with its customers. Synopsys joined the ranks of authorized CNAs along with other well-known commercial entities such as Linux, Red Hat, Google, and Microsoft. *Id.*

RBS also works in the open source software security market. Its primary product is a database called "VulnDB" that compiles information about open source software vulnerabilities. *Id.* at ¶ 16.

## II.       RBS's Cease and Desist Letter

On April 5, 2021, less than a week after it was announced that Synopsys would become a CNA, RBS sent Synopsys the Cease and Desist Letter. Dkt. 1-1. The Cease and Desist Letter alleges that Synopsys' participation in the CVE Program as a CNA would constitute "at a minimum—a) copyright infringement . . . ; b) misappropriation of [trade secrets] under the Defend Trade Secrets Act . . . and state law under the Virginia Trade Secrets Act . . . ; and c) tortious interference with RBS's current and prospective economic relationships under Virginia common law." *Id.* at 2. Unless Synopsys agreed not to perform any work as a CNA until the "full resolution" of the MA Action, RBS threatened to "seek all remedies under the law, including injunctive relief and recovery of its attorneys' fees." *Id.* In short, RBS threatened to file suit to prevent Synopsys from performing as a CNA. Importantly, because federal courts have exclusive jurisdiction over copyright claims, RBS could not file these threatened claims in the MA Action. RBS was threatening to file a separate lawsuit against Synopsys.

Contrary to RBS's allegations, Synopsys uses its own cybersecurity research and independent access to the wealth of publicly available information concerning vulnerabilities to develop information and assign CVE identification numbers to newly discovered vulnerabilities as a CNA. Dkt. 1 at ¶ 40.[1] In response to the Cease and Desist Letter, Synopsys filed this lawsuit on April 14, 2021.

---

[1]  In the Complaint, Synopsys alleges that information used in its role as a CNA is the result of "its own research and its own independent access to the wealth of publicly available information," and not RBS's trade secrets or copyrighted information. *Id.* at ¶ 40. Accordingly, RBS's assertion that

4

### III.    The MA Action Between RBS and Black Duck

On August 17, 2018, RBS filed a lawsuit in Massachusetts state court against Black Duck, a subsidiary of Synopsys, in which RBS alleges a variety of claims under Massachusetts state law arising out of a "Reseller Agreement" between Black Duck and RBS (the "MA Action"). Dkt. 10-2. Synopsys is not a party to either the MA Action or the Reseller Agreement. *See* Dkt. 10-1; Dkt. 10-2. The amended complaint in the MA Action includes the following claims, among others: (i) breach of contract; (ii) breach of implied covenant of good faith and fair dealing; (iii) unfair and deceptive trade practices under Massachusetts statute; (iv) misappropriation of trade secrets under Massachusetts common law and statute; (v) unjust enrichment; and (vi) quantum meruit. Dkt. 10-2. The MA Action contains no claims under the United States copyright laws, the federal Defend Trade Secrets Act, or Virginia law. *See generally id.*

Although it was filed in August 2018, the MA Action is not at an advanced stage. Discovery is not complete. Documents have been produced but no depositions have been taken, or even scheduled. No trial date has been set. The current schedule contemplates summary judgment motions will be filed in March 2022. *See* Decl. of Patrick T. Michael, Ex. A. And, of particular note for purposes of this motion, on May 5, 2021, the court in the MA Action discussed with the parties the pendency of this lawsuit, and suggested the parties stipulate to provisions in the protective order that would permit cross-use of discovery materials between the MA Action and this case. *See id.*, Ex. B at 20:17-27:12. The court did not raise any objection or take issue with the pendency of this case. *Id.*[2]

Synopsys has not denied that it would be using RBS's information is unfounded. *See* Dkt. 9 at 11–12.

[2] Synopsys does not address here many of the factual assertions made by RBS—without citation to supporting documentation—in the Background section of its Motion, as they are irrelevant to the issues presented in the Motion. When the time comes, Synopsys will respond fully to those assertions.

## ARGUMENT

"The rule is well recognized that the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction." *VonRosenberg v. Lawrence*, 849 F.3d 163, 167 (4th Cir. 2017) ("*VonRosenberg II*") (quoting *McClellan v. Carland*, 217 U.S. 268, 282 (1910)).

Contrary to RBS's arguments, it is only in limited circumstances that a Court may abstain in a case over which it has subject matter jurisdiction. *Lufthansa Sys. Infratec GmbH v. Wi-SKY Inflight, Inc.*, 2011 WL 862314, at *10 (March 9, 2011 E.D. Va.) (Gibney, J.) ("Abstention from the exercise of federal jurisdiction is the exception, not the rule."). In cases like this one, where there are affirmative claims other than declaratory relief, the exacting standard announced by the Supreme Court in *Colorado River* must be satisfied. *See VonRosenberg v. Lawrence*, 781 F.3d 731, 735 (4th Cir. 2015) ("*VonRosenberg I*"); *see Lufthansa*, 2011 WL 862314, at *11. Under *Colorado River*, there are six factors the Court must consider. In cases that involve only declaratory claims, the Court applies the standard originally set out by the Supreme Court in *Brillhart v. Excess Insurance Co.*, 316 U.S. 491 (1942) and *Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995). In applying *Brillhart/Wilton*, the Fourth Circuit in *Nautilus Ins. Co.*, identified four factors to be considered.[3]

Under either test, these factors apply regardless whether the abstention request is styled as a dismissal or, as here, a stay. *See, e.g.*, *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,

---

[3]  These are sometimes referred to as the "*Nautilus* factors." Although the Fourth Circuit later backtracked from any implied constraints on district court discretion in *Nautilus*, *see Centennial Life Ins. Co. v. Poston*, 88 F.3d 255, 257–58 (4th Cir. 1996), the *Nautilus* factors remain good law and still are cited and applied in evaluating the *Brillhart/Wilton* standard. *See, e.g.*, *Great Am. Ins. Co. v. Gross*, 468 F.3d 199, 211–12 (4th Cir. 2006) (citing and applying the *Nautilus* factors); *Lufthansa*, 2011 WL 862314, at *11-12 (applying *Nautilus* factors) (citing *Great Am. Ins. Co.*, 468 F.3d at 211).

460 U.S. 1, 16 (1983) ("[Plaintiff] argues that the *Colorado River* test is somehow inapplicable because in this case the District Court merely stayed the federal litigation rather than dismissing the suit outright . . . We reject [that argument]."); *see Zurich Am. Ins. Co. v. Pub. Storage*, 697 F. Supp. 2d 640, 646 (E.D. Va. 2010) (denying defendant's motion to stay after applying the *Nautilus* factors).[4] And yet RBS fails to identify, much less analyze, any of these factors—under either abstention standard—in its Motion. The general stay factors cited by RBS in its Motion, Dkt. 9 at 15, simply do not govern the Motion. *See, e.g.*, *VonRosenberg II*, 849 F.3d at 168 (stating "*Colorado River* **requires** a court to balance carefully several other factors before abstaining" and then listing six *Colorado River* factors) (emphasis added); *Lufthansa*, 2011 WL 862314, at *11-12 (stating "[t]he Court **must** consider the following factors in deciding whether to proceed with a declaratory judgment action" and then listing *Nautilus* factors) (emphasis added).[5] For this reason alone, RBS failed to carry its burden on the Motion, and the Court should deny it. Further, because a stay plainly is not warranted under either standard, the Motion should be denied for that additional reason.

I.    **Abstention Is Not Appropriate Under *Colorado River*.**

A.    ***Colorado River* Applies Because This Is a "Mixed" Case.**

The abstention doctrine articulated in *Colorado River* governs cases like this involving "mixed" claims—both declaratory and non-declaratory claims. *VonRosenberg I*, 781 F.3d at 735.

---

[4] *See also Allstate Ins. Co. v. Hechinger Co*., 982 F. Supp. 1169, 1175 n.13 (E.D. Va. 1997) ("The factors discussed in *Colorado River* and its progeny apply equally to motions to dismiss and motions to stay; the analysis is the same for each.")

[5] To be clear, RBS is not asking the Court to enter a brief stay merely as a docket management tool; it is asking the Court to enter a years-long stay as a means of deferring to a case pending in state court. It is the *Colorado River* (or *Nautilus*) factors that govern the propriety of such a stay. *See Moses H. Cone Memorial Hosp.*, 460 U.S. at 16; *Cottrell v. Duke*, 737 F.3d 1238, 1249 (8th Cir. 2013) ("To permit a district court to rely solely on its inherent power to control its docket, when the effect of the district court's order is to accomplish the same result contemplated by *Colorado River*, would allow a court to bypass the rigorous test set out by the Supreme Court.").

Importantly, *Colorado River* applies "even when the claims for coercive relief are merely ancillary to [a party's] request for declaratory relief." *Id.* (internal quotations omitted).

Synopsys' complaint contains an affirmative claim for copyright misuse (Count III), accompanied by three declaratory judgment claims (Counts I, II, IV). Dkt. 1 at 10–19. Courts across the country have held that copyright misuse can be pleaded as an affirmative claim. *See, e.g.*, *Midwest Tape, LL v. Recorded Books, LLC*, No. 3:09 CV 2176, 2010 WL 1258101, at *1 (N.D. Ohio March 26, 2010); *Apple Inc. v. PsyStar Corp.*, No. C 08–3251 WHA, 2009 WL 303046, at *2–3 (N.D. Cal. Feb. 6, 2009); *Elec. Data Sys. Corp. v. Computer Assocs. Int'l, Inc.*, 802 F. Supp. 1463, 1465–66 (N.D. Tex. 1992).[6] If successful, a claim for copyright misuse entitles the claimant to non-declaratory relief, *e.g.*, an injunction precluding the alleged copyright holder from bringing suit during the period of misuse. *See Practice Mgmt. Info. Corp. v. Am. Med. Ass'n*, 121 F.3d 516, 520 n.9 (9th Cir. 1997), *amended*, 133 F.3d 1140 (9th Cir. 1998) ("Copyright misuse does not invalidate a copyright, but precludes its enforcement during the period of misuse.") (citing *Lasercomb Am., Inc. v. Reynolds*, 911 F.2d 970, 976–77 (4th Cir. 1990)); *PsyStar*, 2009 WL 303046, at *2–3 (same).

In any event, the merits of the copyright misuse claim are irrelevant to RBS's motion. RBS chose to file this motion to stay instead of moving to dismiss that claim. If RBS thought it had a basis to do so, it could have filed a motion to dismiss. Instead, it chose to ask for a stay at a time when the copyright misuse claim indisputably is in the case. RBS's attempt in the Motion to avoid *Colorado River* by criticizing the copyright misuse claim, Dkt. 9 at 22 n.10, is simply asking the Court to ignore the claim, and to do so based only on RBS's say-so without putting RBS to its

---

[6]  The Fourth Circuit has addressed copyright misuse and confirmed copyright misuse is a valid defense. *See, e.g.*, *Lasercomb Am., Inc. v. Reynolds*, 911 F.2d 970, 976–77 (4th Cir. 1990). The Fourth Circuit has not yet addressed copyright misuse as an affirmative claim.

burden on a motion to dismiss.[7] The Court should reject RBS's invitation to ignore a pending

claim.  In short, this case has mixed declaratory and non-declaratory claims, and it is governed by

*Colorado River*.

> **B.      Abstention Is Not Appropriate Because There Are No Exceptional Circumstances Here.**

Under *Colorado River*, "[a]bstention from the exercise of federal jurisdiction is the

exception, not the rule." 424 U.S. at 813. A district court's discretion to stay "is an *extraordinary*

*and narrow exception* to the duty of a District Court to adjudicate a controversy properly before

it." *VonRosenberg II*, 849 F.3d at 167. (emphasis added). This Court's task is "not to find some

substantial reason for the *exercise* of federal jurisdiction," but rather "to ascertain whether there

exist exceptional circumstances, the clearest justifications, that can suffice under *Colorado River*

to justify the *surrender* of that jurisdiction." *Id.* (internal quotations omitted, emphasis in original).

"In deciding whether such exceptional circumstances exist, a court must first determine

whether the federal and state actions are parallel." *Id.* at 168. If pending state and federal cases are

deemed to be "parallel," the following additional factors must also be balanced:

> (1) whether the subject matter of the litigation involves property
> where the first court may assume in rem jurisdiction to the exclusion

---

[7] RBS did not file a motion to dismiss because it cannot. The complaint alleges that RBS does not have any valid copyright rights in its VulnDB database—and RBS did not identify any in its Cease and Desist Letter. *See generally* Dkt. 1; Dkt. 1-1 (RBS's Cease and Desist Letter). Even in its Motion, RBS merely refers to categories of things that *could be* copyrightable in a database under the law. *See* Dkt. 9 at 19-20. It does not explain whether any aspect of VulnDB falls within these categories, much less explain how Synopsys' alleged conduct purportedly infringes such copyright. Even so, RBS broadly threatened copyright infringement litigation against Synopsys. Dkt. 1-1 at 3. This was an attempt by RBS to suppress competition with VulnDB, regardless of whether it is or contains legally protected material. RBS's tactics are for a specific purpose: to prevent Synopsys from carrying out its duties as a newly authorized CNA, which would improve Synopsys' market position. RBS's overreaching threat of litigation in order to gain a competitive advantage is hallmark copyright misuse. Synopsys' affirmative claim entitles it to, at a minimum, equitable relief to enjoin such misconduct by RBS. *See Practice Mgmt. Info. Corp.*, 121 F.3d at 520 n.9 ("Copyright misuse does not invalidate a copyright, but precludes its enforcement during the period of misuse.")

> of others; (2) whether the federal forum is an inconvenient one; (3) the desirability of avoiding piecemeal litigation; (4) the relevant order in which the courts obtained jurisdiction and the progress achieved in each action; (5) whether state law or federal law provides the rule of decision on the merits; and (6) the adequacy of the state proceeding to protect the parties' rights.

*Id.* (quoting *Chase Brexton Health Servs., Inc. v. Maryland*, 411 F.3d 457, 463 (4th Cir. 2005)). "A court must look at these factors holistically, with the balance heavily weighted in favor of the exercise of jurisdiction." *Id.* (internal quotations omitted). In other words, abstention is appropriate only if the "state-court litigation will be an adequate vehicle for the *complete* and prompt resolution of the issues between the parties." *Id.* (emphasis in original). "If there is any serious doubt that the state action would resolve *all* of the claims, it would be a serious abuse of discretion to abstain." *Id.* (internal quotations omitted).

As explained below, abstention under *Colorado River* is not appropriate because (i) this case and the MA Action are not "parallel" and (ii) even if they were, the *Colorado River* factors weigh heavily against abstention.

### 1.    This Case and the MA Action Are Not "Parallel."

Under *Colorado River*, a court must first determine whether the federal and state actions are "parallel." *VonRosenberg II*, 849 F.3d at 168. State and federal suits are parallel only "if substantially the same parties litigate substantially the same issues in different forums." *Id.* (quoting *New Beckley Mining Corp. v. Int'l Union, United Mine Workers of Am.*, 946 F.2d 1072, 1073 (4th Cir. 1991)). The Fourth Circuit has "strictly construed" the substantial parties prong, "requiring that the parties involved be almost identical"; it is not enough for parties in the state and federal actions to be merely aligned in interest. *Id.* (quoting *Chase Brexton*, 411 F.3d at 464).

"In addition, even state and federal claims arising out of the same factual circumstances do not qualify as parallel if they differ in scope or involve different remedies." *Id.* "[S]ome factual

overlap does not dictate that proceedings are parallel." *New Beckley*, 946 F.2d at 1074. A further indicia of whether a pending state court action is parallel is whether it "will be an adequate vehicle for the ***complete*** and prompt resolution of the issues between the parties." *VonRosenberg II*, 849 F.3d at 168 (emphasis added).

Here, the parties and issues are different than in the MA Action. The MA Action is between RBS and Black Duck. This case is between Synopsys and RBS. This alone prevents a finding that the cases are parallel. *See Lufthansa*, 2011 WL 862314, at *11 ("In this case, the federal plaintiff is not a party to the pending state action in Georgia; thus, to abstain in favor of the Georgia suit would deprive [plaintiff] of the opportunity to protect its rights through litigation. [Plaintiff's] absence from the Georgia suit means the two lawsuits are not parallel.") (citations omitted). Furthermore, the MA Action involves an array of exclusively state law claims revolving around the "Reseller Agreement" between RBS and Black Duck. *See generally* Dkt. 10-2 (MA Action Am. Dkt. 1). The alleged claims include, among others, (i) breach of contract, (ii) breach of implied covenant of good faith and fair dealing; (iii) unfair and deceptive trade practices under Massachusetts statute; (iv) misappropriation of trade secrets under Massachusetts common law and statute; (v) unjust enrichment; and (vi) quantum meruit. *Id.* In contrast, this case involves multiple federal law claims seeking to clarify and protect Synopsys' rights to perform as a CNA. *See generally* Dkt. 1. The claims in this case are (a) declaratory judgement of no copyright infringement; (b) declaratory judgment of no trade secret misappropriation under the federal Defend Trade Secrets Act and Virginia Trade Secrets Act; (c) copyright misuse; and (d) declaratory judgement of no tortious interference under Virginia law. *Id.* Based on the claims alone, it is clear that the MA Action is not "an adequate vehicle for the complete and prompt resolution of the issues between the parties" in this case. *VonRosenberg II*, 849 F.3d at 168. Indeed,

several of the claims here cannot even be brought in the MA Action because federal courts have exclusive jurisdiction over copyright claims.[8] *See Brown-Thomas v. Hynie*, 441 F. Supp. 3d 180, 217-18 (D.S.C. 2019) (holding federal case not "parallel" due to existence of federal copyright claims); *Extra Storage Space, LLC v. Maisel-Hollins Dev., Co.*, 527 F. Supp. 2d 462, 466-67 (D. Md. 2007) (holding federal case not "parallel" due to existence of federal trademark claims).

Although RBS fails to address the "parallel" requirement, RBS's arguments regarding similarity between the cases claim factual overlap relating to the creation and scope of RBS's purported trade secrets and Black Duck's purported misappropriation. Dkt. 9 at 17. But as noted above, some factual overlap does not mean two cases are "parallel." *New Beckley*, 946 F.2d at 1074. Moreover, RBS fails to show any such factual overlap. As to the trade secrets, RBS does not identify them in its Motion, and it has failed to do so in the MA Action, so there is no way to know if they overlap.[9] Nor is the alleged misappropriation here the same as in the MA Action. In the MA Action, RBS sued Black Duck on August 17, 2018, alleging misappropriation by Black Duck under Massachusetts law based on alleged conduct before that date. In contrast, RBS sent Synopsys the Cease and Desist Letter on April 5, 2021—over two and half years later—alleging potential misappropriation by Synopsys under federal and Virginia law based on Synopsys' potential future conduct as a CNA. RBS makes no effort to explain how the legal claims involving

---

[8] RBS's repeated emphasis on the fact that claims in the MA Action are based on Massachusetts law only reinforces the distinction between the two cases. As RBS notes, Black Duck and RBS agreed in the Reseller Agreement that Massachusetts law would apply to claims arising under that agreement. Dkt 9 at 16. It was RBS that threatened claims against Synopsys under federal and Virginia law. Plainly RBS understood these claims to be distinct from the Reseller Agreement and RBS's claims against Black Duck pending in the MA Action.

[9] *See* Michael Decl., Ex. B at 14:22-15:18 (ordering RBS and Black Duck to meet and confer to develop a process for narrowing and identifying RBS's alleged trade secrets and then report by June 4, 2021).

Synopsys at issue here will somehow be decided in the MA Action, which is looking at conduct by a different party years earlier.

For these reasons, the MA Action between RBS and Black Duck is not a parallel proceeding and staying this case in favor of that case is not permitted under *Colorado River.*

> ### 2.   Even if this Case and the MA Action Are Deemed "Parallel," the *Colorado River* Factors Weigh Heavily Against a Stay.

Even if the MA Action were a parallel proceeding, *Colorado River* further requires balancing the following six factors before deciding whether to abstain. *VonRosenberg II*, 849 F.3d at 168. These factors should be examined holistically, "with the balance ***heavily weighted*** in favor of the exercise of jurisdiction." *Id.* (emphasis added). As explained below, these factors weigh heavily against a stay and in favor of exercising jurisdiction.

*<u>Factor 1</u>: Whether the subject matter of the litigation involves property where the first court may assume in rem jurisdiction to the exclusion of others.*

Neither the subject matter of the MA Action nor the subject matter of this case involves property over which the Massachusetts court may assume *in rem* jurisdiction. Therefore, this factor weighs against abstention. *See Great Am. Ins.*, 468 F.3d at 208–09.

*<u>Factor 2</u>: Whether the federal forum is an inconvenient one.*

This Court is not an inconvenient forum—it is RBS's home court. RBS is based in Richmond, Virginia. Synopsys filed this case in the Richmond Division of the Eastern District of Virginia. The key witnesses from RBS who will be needed to testify about RBS's alleged copyright rights and trade secrets should be located in this district and division. Therefore, this factor weighs against abstention. *See id.*

*<u>Factor 3</u>: The desirability of avoiding piecemeal litigation.*

"Only in the most extraordinary circumstances . . . may federal courts abstain from exercising jurisdiction in order to avoid piecemeal litigation. It follows that because of the virtually

unflagging obligation of the federal courts to exercise the jurisdiction given them, pendency of an action in state court by itself does not bar proceedings in federal court." *See Gordon v. Luksch*, 887 F.2d 496, 497–98 (4th Cir.1989)) (internal citations and quotation marks omitted); *see also Villa Marina Yacht Sales, Inc. v. Hatteras Yachts*, 915 F.2d 7, 16 (1st Cir.1990) ("[*Colorado River* abstention] is not warranted simply because related issues otherwise would be decided by different courts, or even because two courts otherwise would be deciding the same issues. As noted above, something more than a concern for judicial efficiency must animate a federal court's decision to give up jurisdiction.").

This factor is not concerned with and does not turn on the mere possibility of inconsistent rulings or future res judicata. *See Colorado River*, 424 U.S. at 816–17 (the "mere potential for conflict in the results of adjudications, does not, without more, warrant staying exercise of federal jurisdiction"); *accord Chase Brexton Health Servs., Inc. v. Maryland*, 411 F.3d 457, 465–66 (4th Cir. 2005). Instead, for this factor to support abstention, retention of jurisdiction must create the possibility of inefficiencies and inconsistent results beyond those inherent in parallel litigation, or the litigation must be particularly ill-suited for resolution in duplicate forums. *Gannett Co. v. Clark Const. Grp.*, 286 F.3d 737, 744 (4th Cir. 2002).

Here, as noted above, RBS has not shown any clear factual overlap between the two cases. The scope of RBS's purported trade secrets at issue in each proceeding have not been identified, and the alleged misappropriation involves different parties and different time periods, years apart. Thus, this case certainly does not present any heightened risk of inconsistent results.

Nor does litigating the MA Action and this case simultaneously create the type of severe inefficiencies with which *Colorado River* was concerned. Among other things, the MA Action is not as far along as its filing date would suggest. For example, a trial date has not been set. Michael

Decl., Ex. A. Similarly, discovery is ongoing, but no depositions have taken place. And in early May, the court in the MA Action ordered RBS and Black Duck to meet and confer about RBS's inability to specifically identify its alleged trade secrets—which RBS still has not done—because that will impact the scope of the case going forward. *Id.*, Ex. B at 14:22-15:18. Even on the current schedule, summary judgment motions are not due to be filed until March 2022.[10] Furthermore, to the extent documents produced in the MA Action turn out to be relevant in this case, the parties already discussed with the Massachusetts court an amendment to the protective order in that case that would allow documents and other discovery materials in that case to be used here. *Id.*, Ex. B at 20:17-27:12.

For all these reasons, this factor does not provide any support for abstention.

### *Factor 4: The relevant order in which the courts obtained jurisdiction and the progress achieved in each action.*

This factor is not "measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two actions." *See Moses H. Cone Mem'l Hosp.*, 460 U.S. at 21. As noted above, while the MA Action was filed earlier than this case, it is not at as advanced a stage as may be expected. Among other things, even on the current schedule, summary judgment motions are not due until next March 2022, and a trial a date, which has not yet been set, would be well beyond that. But even if the MA Action had achieved more progress, this factor cannot provide substantial support for abstention, as multiple claims in this case cannot even be adjudicated in the MA Action, regardless of its progress. Moreover, as this action was prompted by RBS's April 5, 2021 Cease and Desist Letter, and the new claims asserted by RBS

---

[10]  In the Motion, RBS tries to make much of the fact they asked to file a partial summary judgment motion as to liability on one of their nine claims. *See* Dkt. 9 at 1, 10, 16. The court in Massachusetts indicated that such a motion likely is premature, Michael Decl., Ex. B at 17:6-21:2, and, even if it were not, the majority of claims would be unaffected.

against Synopsys therein, the MA Action—involving different conduct by a different party years before—has certainly not been making progress on those claims since its inception. For these reasons, this factor does not support abstention.

***Factor 5*: *Whether state law or federal law provides the rule of decision on the merits.***

Federal law provides the rule of decision on three of the four counts in Synopsys' complaint. Specifically, Count I (Declaratory Judgment of No Copyright Infringement) and Count III (Copyright Misuse) arise under the copyright laws of the United States, 17 U.S.C. § 101 *et seq*, and Claim II (Declaratory Judgement of No Trade Secret Misappropriation) arises in part under the federal Defend Trade Secrets Act, 18 U.S.C. §§ 1831–39. Because federal law governs the merits of a majority of the claims in this case, this factor weighs heavily against abstention.

***Factor 6*: *The adequacy of the state proceeding to protect the parties' rights.***

This factor, along with the previous Factor 5, "typically are designed to justify retention of jurisdiction where an important federal right is implicated and state proceedings may be inadequate to protect the federal right." *Gannett*, 286 F.3d at 746 (citation and internal quotation marks omitted). Where, as here, the state court cannot even hear several of the claims in the federal case, Synopsys' legal rights cannot be protected by the state court.[11] *Cf. Brown-Thomas*, 441 F. Supp. 3d at 217-18; *Extra Storage Space, LLC*, 527 F. Supp. 2d at 466-67. For this reason, as noted above, RBS's requested stay in favor of the MA Action would harm Synopsys. Synopsys would have no means of getting clarity on the RBS's threatened claims, including copyright infringement, until after the after the resolution of the MA Action, forcing Synopsys to either refrain from its

---

[11]  RBS's argument that somehow the copyright issues "could be resolved" in the MA Action simply because "evidence as to the means by which VulnDB was constructed and compiled . . . speaks to the copyrightability of VulnDB," Dkt. 9 at 21-22, is specious. Even if evidence concerning the creation of VulnDB arises in the MA Action, that would not establish copyrightability, and neither copyrightability nor alleged infringement would, or even could, be an issue in that case. As such, they certainly would not be resolved in that case.

work as a CNA or perform that work under the threat of litigation. This is a harm the Declaratory Judgment Act was intended to prevent. This factor weighs against abstention.

*     *     *

For all of these reasons, even if the MA Action was a "parallel proceeding," application of the *Colorado River* factors weighs heavily against a stay, and RBS's motion should be denied.

## II.     A Stay Is Not Appropriate Even Under the *Brillhart/Wilton* Standard.

Even if *Colorado River* did not apply—and it does—a stay would still be inappropriate under the standard set forth in *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491 (1942) and *Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995). As compared to the *Colorado River* standard, *Brillhart/Wilton* affords the Court more discretion in deciding whether to assert jurisdiction or abstain from hearing a case. *See Wilton*, 515 U.S. at 288. "The exercise of such discretion, however, is not without bounds." *Volvo Constr. Equip. N.A., Inc. v. CLM Equip. Co.*, 386 F.3d 581, 594 (4th Cir. 2004). "[A] district court is obliged to rule on the merits of a declaratory judgment action when declaratory relief will serve a useful purpose in clarifying and settling the legal relations in issue and will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Id.* (internal quotations omitted).

The Fourth Circuit sets forth the following factors for evaluating a request for abstention under *Brillhart/Wilton*:

> (1) whether the state has a strong interest in having the issues decided in its courts; (2) whether the state court could resolve the issues more efficiently than the federal court; (3) whether the presence of overlapping issues of fact or law might create unnecessary entanglement between the state and federal court; and (4) whether the federal action is mere procedural fencing in the sense that the action is merely the product of forum shopping.

*Great Am. Ins. Co.*, 468 F.3d at 211 (citing *Nautilus Ins. Co.*, 15 F.3d at 377). Here, none of the factors weighs in favor of abstention.

17

***Factor 1**: Whether the state has a strong interest in having the issues decided in its courts.*

The Commonwealth of Massachusetts has no discernable interest in the claims raised in this case. None of the claims in this case involves Massachusetts law. Indeed, the copyright claims in this case cannot even be addressed by the Massachusetts state court because they are exclusively the jurisdiction of federal courts. Synopsys is not a party to the MA Action, so Massachusetts does not have any particular interest in addressing Synopsys' legal claims in that case, and RBS is based in Virginia, where this lawsuit is filed. Therefore, Massachusetts does not have any particular interest—much less a strong interest—in having the issues decided in its courts. The first *Nautilus* factor weighs heavily against abstention. *See Davenport v. Robert H. Davenport, D.D.S., M.S., P.A.*, 146 F. Supp. 2d 770, 782 (M.D.N.C. 2001) ("Applying these factors to the case at bar, the Court notes first that because the issues to be decided by judicial declaration are a matter of federal law, the state does not have a strong interest in having the issues decided in its courts.")

***Factor 2**: Whether the state court could resolve the issues more efficiently than the federal court.*

The Massachusetts state court cannot resolve the issues of this case more efficiently than this Court. In fact, it cannot resolve them at all because the copyright claims here can only be adjudicated in federal court. This factor requires an inquiry into "'the scope of the pending state court proceeding,'" including "'whether the claims of all parties in interest [to the federal proceeding] can satisfactorily be adjudicated in that proceeding, whether necessary parties have been joined, [and] whether such parties are amenable to process in that proceeding.'" *Great Am. Ins. Co.*, 468 F.3d at 212 (quoting *Brillhart*, 316 U.S. at 495). Synopsys is not a party to the MA Action, and as noted, the Massachusetts state court does not even have jurisdiction to resolve half of Synopsys' claims in this case. The other half of Synopsys' claims are brought under federal law

and Virginia state law, so Massachusetts does not have any more familiarity or experience than this Court to resolve those claims. The second *Nautilus* factor weighs against abstention.

**<u>Factor 3</u>: *Whether the presence of overlapping issues of fact or law might create unnecessary entanglement between the state and federal court.***

This case does not create any unnecessary entanglement between the federal and state courts. There is no overlap in the legal claims, with all claims in the MA Action arising under Massachusetts state law, and all of the claims in this case arising under federal law or Virginia law. In its Motion, RBS focuses on alleged factual overlap regarding the purported trade secrets and misappropriation, but as explained above, it is unclear what trade secrets are at issue in either case. And the alleged misappropriation in each case involves a different party engaged in different conduct years apart. Moreover, each case is substantially broader than trade secret claims. The MA Action arises primarily out of a contract dispute between RBS and Black Duck, involving nine claims, only one of which is for trade secret misappropriation. This case arises from the RBS Cease and Desist Letter, which threatened a new lawsuit against Synopsys for copyright infringement and tortious interference in addition to trade secret claims. That RBS sent that letter to Synopsys, during the pendency of the MA Action, underscores that the factual and legal issues raised in that letter (now the subject of this case) are distinct from the factual and legal issues in the MA Action.

This case will not create unnecessary entanglement with state courts, and this factor weighs against abstention.

**<u>Factor 4</u>: *Whether the federal action is mere procedural fencing in the sense that the action is merely the product of forum shopping.***

This plainly is not a case of forum shopping. RBS, not Synopsys, set this new case in motion by sending the Cease and Desist Letter threatening claims that cannot be filed in the MA Action, or any other state court. The MA Action cannot resolve the claims threatened in the Cease and Desist Letter so RBS cannot credibly argue that the filing of this lawsuit was some improper

attempt to avoid the Massachusetts court as a forum. This case—brought in RBS's home forum—is not "procedural fencing" or a "product of forum shopping," and the fourth *Nautilus* factor weighs against abstention.

*        *        *

Because all four *Nautilus* factors weigh in favor of this Court exercising jurisdiction, the Court should deny the Motion even if *Colorado River* does not apply.

**<u>CONCLUSION</u>**

For the foregoing reasons, Synopsys respectfully requests that the Court deny RBS's Motion to Stay.

Dated: June 1, 2021                    Respectfully submitted,

/s/ *Christopher T. Pickens*
N. Thomas Connally, VSB No. 36318
Christopher T. Pickens, VSB No. 75307
HOGAN LOVELLS US LLP
8350 Broad St., 17th Floor
Tysons, VA 22102
T: 703-610-6100
F: 703-610-6200
tom.connally@hoganlovells.com
christopher.pickens@hoganlovells.com

Krista S. Schwartz (admitted PHV)
Patrick T. Michael (admitted PHV)
3 Embarcadero Center, Suite 1500
San Francisco, CA 94111
T: 415-374-2300
F: 415-374-2499
krista.schwartz@hoganlovells.com
patrick.michael@hoganlovells.com

*Counsel for Plaintiff Synopsys, Inc.*

20

## <u>CERTIFICATE OF SERVICE</u>

I certify that on June 1, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

/s/ *Christopher T. Pickens*
Christopher T. Pickens, VSB No. 75307
HOGAN LOVELLS US LLP
8350 Broad St., 17th Floor
Tysons, VA 22102
T: 703-610-6100
F: 703-610-6200
christopher.pickens@hoganlovells.com

*Counsel for Plaintiff Synopsys, Inc.*