IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

SYNOPSYS, INC.,
       Plaintiff,

v.                                                               Civil Action No. 3:21cv252

RISK BASED SECURITY, INC.,
       Defendant.

## MEMORANDUM ORDER

This matter comes before the Court on Risk Based Security, Inc.'s ("RBS") Motion to Stay This Action. (ECF No. 8.) RBS moves to stay the instant case until the proceedings in *Risk Based Security, Inc. v. Black Duck Software, Inc.*, No. 2084CV00258 (Mass. Super., Suffolk County filed Jan. 28, 2020), conclude. Because RBS does not establish that the relevant factors warrant a stay, the Court will deny its motion.

## I. BACKGROUND

On March 30, 2021, Synopsys, Inc. ("Synopsys") issued a press release announcing that the CVE (Common Vulnerabilities and Exposure) Program had designated it a CVE Numbering Authority ("CNA"). The CVE Program identifies, defines, and catalog publicly disclosed cybersecurity vulnerabilities within open source software.[1] The CVE Program authorizes CNAs to assign identification numbers to newly discovered vulnerabilities and publish information about

---

[1] Open source software allows the public to inspect and manipulate source code, the software's underlying programming, in order to fix problems or improve the software. *What is open source*, Opensource.com, https://opensource.com/resources/what-open-source (last visited July 12, 2021). Vulnerabilities involve "poorly written code, leaving 'holes' or gaps that attackers can use to carry out malicious activities, such as modifying the code to extract sensitive data or damage the system." Gilad David Maayan, *The Dangers of Open-Source Vulnerabilities, and What You Can Do About It*, Sec. Today (Aug. 19, 2019), https://securitytoday.com/articles/2019/08/19/the-dangers-of-opensource-vulnerabilities-and-what-you-can-do-about-it.aspx.

vulnerabilities to the CVE public catalog. In its March 30 press release, Synopsys affirmed not only that it would perform its CNA duty to inform the community about newly discovered vulnerabilities, but that it would also update inaccurate and incomplete vulnerabilities listed in the existing CVE catalog. These promised changes to the CVE catalog concerned RBS.

Prior to 2011, the Open Sourced Vulnerability Database (the "OSVDB") operated a public vulnerability database—an organized collection of information on open source software vulnerabilities—in a similar fashion to the CVE catalog. The OSVDB relied on public contributions for the database's content and allowed public access to the database to find vulnerability information in turn. RBS acquired the OSVDB in 2011. Between 2011 and 2016, RBS developed its own private vulnerability database, VulnDB. VulnDB contained similar information about open source software vulnerabilities. It also provided additional data on vulnerabilities, including identification numbers that RBS assigned, metadata on the listed vulnerabilities, and RBS's analysis of the vulnerabilities. After RBS acquired the OSVDB, it continued to allow public access and contributions until April 5, 2016, when it made all the vulnerability information available only through subscription to VulnDB. When Synopsys announced it would update the CVE catalog, it became a competitor of RBS's VulnDB.

Six days after Synopsys's March 30 press release, RBS sent Synopsys a cease and desist letter demanding that Synopsys stop activity RBS considered copyright infringement, trade secret misappropriation, and tortious interference. RBS contended that for Synopsys to perform its duties as a CNA, namely updating existing, incomplete vulnerabilities within the CVE catalog, Synopsys would have to release information misappropriated from RBS's database, VulnDB. Specifically, RBS contended that Black Duck Software, Inc. ("Black Duck"), a company Synopsys acquired in November 2017, stole trade secret information on vulnerabilities listed in VulnDB from 2015 to

2

2018. RBS contended that Synopsys would have to rely on this misappropriated information to update the vulnerabilities in the CVE catalog. If Synopsys did not comply with the letter's demands, RBS threatened to seek all available remedies.

At the time RBS sent the cease and desist letter, it had already sued Synopsys's subsidiary Black Duck. In 2018, RBS sued Black Duck in state court in Massachusetts alleging that Black Duck breached a contract with RBS and stole trade secret information from VulnDB. Those allegations arose from a Reseller Agreement RBS and Black Duck entered into in 2014. Under that agreement, RBS licensed Black Duck to include links to and information from RBS's VulnDB into the service that Black Duck provided to its subscription clients. RBS alleged that Black Duck breached that Reseller Agreement when its employees improperly collected vulnerability information from VulnDB intending to build a vulnerability database that Black Duck owned. In its complaint, RBS listed seven claims related to Black Duck's alleged breach of contract and two trade secret claims related to the information Black Duck allegedly stole from VulnDB. Three years after filing the Massachusetts complaint, the litigation remains in the discovery phase and does not have a trial date set.

In response to the cease and desist letter, Synopsys filed the instant suit against RBS on April 14, 2021. Synopsys seeks a declaratory judgment (1) that Synopsys will not infringe on RBS's copyright by fulfilling its duties as a CNA; (2) that Synopsys will not misappropriate RBS's trade secrets under Virginia and federal law by fulfilling its duties as a CNA; (3) that RBS committed copyright misuse when it threatened Synopsys with litigation in the April 5, 2021 cease and desist letter; and (4) that Synopsys's actions as a CNA do not amount to tortious interference with RBS's existing or future business under Virginia common law.

On May 18, 2021, RBS moved to stay the proceedings until the litigation in state court in Massachusetts between RBS and Black Duck concludes. RBS relies primarily on the breach of contract claim at the heart of the Massachusetts litigation to support its motion to stay. RBS asserts that to perform its duties as a CNA and release vulnerabilities to the CVE catalog, Synopsys would have to rely on the information Black Duck allegedly misappropriated from VulnDB. As a result, RBS asks the Court to abstain from hearing this case and stay the matter in the interest of judicial economy and to avoid inconsistent legal determinations. RBS says a stay would not prejudice Synopsys, but the absence of a stay would significantly harm RBS.

## II. DISCUSSION

### A. Legal Standard

"The doctrine of abstention, under which a District Court may decline to exercise or postpone the exercise of its jurisdiction," represents an exception to the general rule that federal courts have an obligation to exercise jurisdiction where available. *Cnty. of Allegheny v. Frank Mashuda Co.*, 360 U.S. 185, 188 (1959). Even the presence of a similar or prior action in another court ordinarily does not overcome the Court's responsibility to adjudicate issues properly before it.[2] Courts do, however, have broad discretion to stay proceedings in order to efficiently manage their dockets. *Clinton v. Jones*, 520 U.S. 681, 706–07 (1997). Even with their broad discretion, courts still must "weigh competing interests and maintain an even balance" between the rights of the litigants to have their case heard and "economy of time and effort for [the Court], for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 255 (1936).

---

[2] *See Stanton v. Embrey*, 93 U.S. 548, 554 (1877) (holding the pendency of a prior suit in another jurisdiction does not bar a subsequent suit for the same cause of action); *McLaughlin v. United Virginia Bank*, 955 F.2d 930, 932 (4th Cir. 1992) (holding the same).

4

No general rule governs when courts should abstain from exercising jurisdiction, but the Supreme Court has outlined factors that can aid courts in specific circumstances involving similar federal and state actions. Where two parallel actions in different forums exist and the federal complaint offers a "mixed case"—a complaint containing both declaratory and non-declaratory relief claims—courts must apply the factors outlined in *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976). *VonRosenberg v. Lawrence* (*VonRosenberg I*), 781 F.3d 731, 735 (4th Cir. 2015).

Alternatively, courts may employ the factors outlined in *Brillhart v. Excess Insurance Company of America*, 316 U.S. 491 (1942), and *Wilton v. Seven Falls Company*, 515 U.S. 277 (1995). Unlike *Colorado River*, which requires the presence of parallel federal and state actions plus declaratory and non-declaratory claims, *Brillhart/Wilton* remains available in the absence of parallel federal and state actions if the federal action contains only declaratory judgment claims. *Wilton*, 515 U.S. at 282.[3]

---

[3] *Brillhart* ordinarily governs district courts' discretion in hearing declaratory judgment actions. *Wilton*, 515 U.S. at 282, 289. In the Fourth Circuit, "[t]here is no requirement that a parallel proceeding be pending in state court before a federal court should decline to exercise jurisdiction over a declaratory judgment action." *Aetna Cas. & Sur.*, 139 F.3d at 423. While other circuits may require parallel proceedings to apply *Brillhart/Wilton*, the Supreme Court has not created such a mandate and stated in *Wilton* that it did not "delineate the outer boundaries of [district courts'] discretion in other cases, for example, cases . . . in which there are no parallel state proceedings." 515 U.S. at 289–90. The Fourth Circuit addressed those outer boundaries by stating that "even in the absence [parallel] state court proceedings . . . considerations of federalism, efficiency, comity, and procedural 'fencing,' continue to be factors which the district court should balance when determining whether to assert jurisdiction over a declaratory judgment action." *Aetna Cas. & Sur.*, 139 F.3d at 423. These "considerations of federalism, efficiency, comity, and procedural 'fencing'" represent the Fourth Circuit's interpretation of the *Brillhart/Wilton* factors as outlined in *Nautilus Insurance Co. v. Winchester Homes, Inc.*, 15 F.3d 371, 377–76 (4th Cir. 1994).

Under both the *Colorado River* and *Brillhart/Wilton* standards the decision to stay rests on "a careful balancing of the important factors as they apply in a given case, with the balance heavily weighted in favor of the exercise of jurisdiction." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 16 (1983).

### *B. Analysis*

#### 1. Colorado River *Abstention Standard*

Under *Colorado River*, federal courts in their discretion may abstain out of deference to a pending state court proceeding "for reasons of wise judicial administration." *Colorado River*, 424 U.S. at 814, 817–18. Courts may only exercise this limited discretion in the "exceptional circumstances" where having the State court resolve the dispute would serve an important interest. *Chase Brexton Health Servs., Inc. v. Maryland*, 411 F.3d 457, 463 (4th Cir. 2005). "The threshold question in determining whether *Colorado River* abstention is appropriate is whether there are parallel federal and state suits."[4] *Chase Brexton*, 411 F.3d at 463.

Federal and state actions amount to parallel proceedings if "substantially the same parties litigate substantially the same issues in different forums." *New Beckley Mining Corp. v. Int'l Union*, 946 F.2d 1072, 1073 (4th Cir. 1991). "The parties need not be identical for the suits to be parallel." *Baseline Sports, Inc. v. Third Base Sports*, 341 F. Supp. 2d 605, 608 (E.D. Va. 2004).[5] Parties merely aligned in interest, however, do not amount to substantially the same. *VonRosenberg v. Lawrence (VonRosenberg II)*, 849 F.3d 163, 168 (4th Cir. 2017). "In addition,

---

[4] For *Colorado River* to apply courts also consider whether the federal complaint presents a mixed case containing both declaratory and non-declaratory relief claims. *VonRosenberg I*, 781 F.3d at 735.

[5] *See also Chase Brexton*, 411 F.3d at 463 ("[W]e have strictly construed the requirement of parallel federal and state suits, requiring that the parties be almost identical.").

6

[] state and federal claims arising out of the same factual circumstances do not qualify as parallel if they differ in scope or involve different remedies." *Id*; *New Beckley*, 946 F.2d at 1074 ("[S]ome factual overlap does not dictate that proceedings are parallel."). Courts may consider abstention only when "the parallel state-court litigation will be an adequate vehicle for the complete and prompt resolution of the issues between the parties." *Moses H. Cone*, 460 U.S. at 28. If courts have serious doubts about a state action's ability to resolve all the claims, then they should not abstain. *VonRosenberg II*, 849 F.3d at 168.

This case satisfies the first part of the *Colorado River* test: Synopsys and Black Duck represent substantially the same parties. While RBS did not add Synopsys as a party to the Massachusetts litigation, Synopsys's complete ownership of Black Duck makes it and Black Duck almost identical. That alone, however, does not make the two actions parallel.

The issues before this Court and the Massachusetts court, however, differ in scope and remedy, and the Massachusetts court cannot completely resolve of all of Synopsys's claims. The Massachusetts litigation primarily focuses on the actions of a few Black Duck employees who, according to RBS, stole vulnerability information from VulnDB. Before the Massachusetts court, RBS contends that those alleged actions amount to a breach of the Reseller Agreement between the two entities and trade secret misappropriation. While RBS raised trade secret claims in the Massachusetts litigation, those claims and the litigation as a whole focus on the alleged thefts between 2015 and 2018. In contrast, Synopsys brought its claims before this Court because of the cease and desist letter that RBS sent it on April 5, 2021. While some facts may overlap regarding what information constitutes RBS's trade secrets, the threat of future litigation over actions to occur in the future defines the scope of this action. As a result, the scope of this action and the Massachusetts litigation differ. Moreover, the parties seek different remedies in the two

proceedings. RBS seeks monetary damages from the proceedings in Massachusetts while Synopsys seeks declaratory relief for its claims before this Court.

Finally, the Massachusetts court cannot completely resolve all of Synopsys's claims. *See VonRosenberg II*, 849 F.3d at 168 ("If there is any serious doubt that the state action would resolve all of the claims, 'it would be a serious abuse of discretion' to abstain." (quoting *Moses H. Cone*, 460 U.S. at 28)). While the Massachusetts court could resolve issues related to Synopsys's trade secret claim, it could not resolve Synopsys's copyright claims or tortious interference claim. Federal courts have exclusive jurisdiction over copyright claims, 28 U.S.C. § 1338(a), so the Massachusetts court could not resolve Synopsys's copyright infringement or copyright misuse claims. Nor does the Massachusetts court have the necessary familiarity and experience with Virginia common law to resolve Synopsys's tortious interference claim.

Because the actions in this Court and in Massachusetts do not amount to parallel proceedings, *Colorado River* abstention does not apply.[6]

The Court must still, however, consider *Brillhart/Wilton* abstention.

---

[6] If parallel suit had existed, *Colorado River* would require the Court to carefully balance several factors "with the balance heavily weighted in favor of the exercise of jurisdiction." *Moses H. Cone*, 460 U.S. at 16; *see also New Beckley*, 946 F.2d at 1073–79. These factors include: (1) "the assumption by either court of jurisdiction over property;" (2) "the inconvenience of the federal forum;" (3) "the desirability of avoiding piecemeal litigation;" (4) "the order in which the courts obtained jurisdiction and the progress achieved in each action;" (5) "the source of applicable law;" and (6) "whether the state proceedings will adequately protect the parties rights." *Baseline Sports*, 341 F. Supp. 2d at 608. Additionally, courts should consider "whether either the state or the federal suit 'was a contrived, defensive reaction' to the other." *McLaughlin*, 955 F.2d at 935 (quoting *Moses H. Cone*, 460 U.S. at 23). Courts may not use these factors as a checklist, "but must balance the weight of each in accordance with the facts of a given case." Id. In this case, the Court need not address the *Colorado River* factors because RBS fails to establish that the Massachusetts litigation and this litigation amount to parallel proceedings.

### 2. Brillhart/Wilton *Abstention Standard*

Under the *Brillhart/Wilton* abstention standard, district courts have broad discretion when determining whether to hear declaratory judgment actions with concurrent state court proceedings. *Wilton*, 515 U.S. at 288. This discretion has limits. District courts "may not refuse to entertain a declaratory judgment action out of 'whim or personal disinclination.'" *Nautilus*, 15 F.3d at 375 (quoting *Pub. Affs. Assoc., Inc. v. Rickover*, 369 U.S. 111, 112 (1962)). To guide district courts in exercising their discretion, the Fourth Circuit outlined four factors relevant to *Brillhart/Wilton* analysis: (1) "the strength of the state's interest in having the issues . . . decided in the state courts," (2) "whether the issues . . . can more efficiently be resolved in the [state] court[s,]" (3) "whether permitting the federal action to go forward would result in unnecessary 'entanglement' between the federal and state court systems, because of the presence of 'overlapping issues of fact or law,'" and (4) "whether the declaratory judgment action is being used merely as a device for 'procedural fencing.'" *Nautilus Ins.*, 15 F.3d at 376–77. After considering these factors, the Court does not find *Brillhart/Wilton* abstention warranted.

#### a. Whether the State Has a Strong Interest in Having the Issues Resolved Before Its Court

The first *Brillhart/Wilton* factor—whether the state has a strong interest in its courts deciding the issue—does not favor abstention because Massachusetts does not have a strong interest in resolving issues involving federal and Virginia law. RBS claims that Massachusetts has a strong interest in resolving Synopsys's claims because it has a strong interest in resolving the contract dispute between it and Black Duck, which Massachusetts law governs. That argument does not align with the issues before this Court. None of Synopsys's claims involve the RBS-Black Duck Reseller Agreement or Massachusetts law. While Massachusetts may have a weak interest in resolving Synopsys's trade secret claim (given the similarities between the federal law

9

and Massachusetts law), it does not have an interest in the remaining three claims. Two of Synopsys's claims involve federal copyright law, which the district courts have exclusive rights to hear. The tort claim the Massachusetts court cannot address because it lacks familiarity and experience with Virginia common law. Accordingly, Massachusetts does not have a strong interest in having Synopsys's claims resolved before its court.

### b. Whether the State Court Could Resolve the Issues More Efficiently

The second factor—whether the Massachusetts court could resolve Synopsys's issues more efficiently—cuts decidedly in favor of exercising jurisdiction. RBS contends that the Massachusetts court could resolve some of the issues more efficiently than this Court because the Massachusetts litigation has finished document discovery. In its argument, RBS fails to address the state court's inability to resolve Synopsys's other three claims. As discussed above, the Massachusetts court lack authority to resolve either of Synopsys's copyright claims and lacks the familiarity to resolve Synopsys's tort claim under Virginia law. Abstaining in favor of the Massachusetts litigation would have Synopsys wait idly by on those three claims.

Further, the parties in the Massachusetts litigation have yet to begin depositions or expert discovery, and the parties will file motions for summary judgment in March of 2022. On the other hand, the instant action will go to trial on March 14, 2022. Consequently, this Court can more efficiently resolve all of Synopsys's claims.

### c. Whether the Federal Action Would Unnecessarily Entangle the Federal and State Courts

The third factor addresses whether continuing this action would unnecessarily entangle the federal and state courts because of overlapping facts and law. Nothing indicates that proceeding with Synopsys's claims would create unnecessary entanglement with the Massachusetts court. The issues here focus on whether Synopsys's actions as a CNA would misappropriate RBS's trade

secrets, infringe RBS's copyrights, and tortiously interfere with RBS's business. This case will not address or resolve whether Black Duck breached its contract with RBS—the focus of the Massachusetts litigation. Despite RBS's contention that this case necessarily involves duplicative facts stemming from Black Duck's alleged breach of contract, that certainty has not manifested at this point. Further, Synopsys's claims involve federal and Virginia state law, not Massachusetts law. Exercising jurisdiction over this action, therefore, would not unnecessarily entangle this Court and the Massachusetts court.

### d. Whether the Plaintiff Brought this Action Merely as a Device for Procedural Fencing

Finally, the Court does not find that Synopsys began this action merely as a device for procedural fencing.[7] RBS's contention that Synopsys engaged in procedural fencing ignores the fact that Synopsys filed this suit in response to the cease and desist letter that RBS sent on April 5, 2021. Even though the Massachusetts litigation had already begun when Synopsys initiated this suit, that does not automatically mean it engaged in procedural fencing. Synopsys brought this action to promptly resolve whether acting as a CNA would result in Synopsys committing the unlawful acts RBS claimed it would commit in its cease and desist letter. None of the issues Synopsys raised pend before the Massachusetts court, and Synopsys filed this action in a less favorable forum to it: RBS is a Virginia company, while Synopsys operates in California. Thus, this factor does not favor abstention because Synopsys did not engage in procedural fencing by bringing this action.

\* \* \* \*

---

[7] Procedural fencing occurs when "a party has raced to federal court in an effort to get certain issues that are already pending before the state courts resolved first in a more favorable forum." *Great Am. Ins. Co. v. Gross*, 468 F.3d 199, 212 (4th Cir. 2006).

11

The relevant factors do not support *Brillhart/Wilton* abstention nor outweigh the Court's strong interest in exercising jurisdiction over a case properly before it. In any event, both *Colorado River* abstention and *Brillhart/Wilton* abstention represent discretionary standards. The Court finds abstention unwarranted and will use its discretion to exercise jurisdiction over this case. The Court therefore denies RBS's motion to stay the proceedings.

### III. CONCLUSION

For the reasons outlined above, the Court does not find granting a stay in this case warranted. The Court DENIES RBS's motion. (ECF No. 8.)

It is so ORDERED.

Let the Clerk send a copy of this Order to all counsel of record.

Date: 6 August 2021
Richmond, VA

/s/
John A. Gibney, Jr.
United States District Judge