IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

SYNOPSYS, INC.,

       Plaintiff,

  v.

RISK BASED SECURITY, INC.,

       Defendant.

Civil Action No. 3:21-cv-00252

**DEFENDANT RISK BASED SECURITY, INC.'S REPLY BRIEF IN SUPPORT OF MOTION TO BIFURCATE BRIEFING ON SYNOPSYS'S FEE PETITION**

C. Dewayne Lonas
Stewart R. Pollock
MORAN REEVES CONN PC
1211 East Cary Street
Richmond, VA 23219

Kevin W. Kirsch (admitted *pro hac vice*)
Michael S. Gordon (admitted *pro hac vice*)
Andrew E. Samuels (admitted *pro hac vice*)
BAKER & HOSTETLER LLP
200 Civic Center Drive, Suite 1200
Columbus, OH 43215

*Attorneys for Defendant Risk Based Security, Inc.*

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................... 1

ARGUMENT ............................................................................................................................ 3

I.  The Court Should Bifurcate Briefing on the Issues of Fee Entitlement and Fee Amount......3

    A.  Bifurcation Is Supported by both Law and Logic ....................................................... 3

    B.  Bifurcation Is Practical .................................................................................................4

    C.  Synopsys Is Not Entitled to Fees Under the Reseller Agreement, the DTSA
        or the VUTSA ...............................................................................................................5

II. Should the Court Refuse to Bifurcate, It Should Order Synopsys to Produce Its Invoices and Billing Records, Adopt a Briefing Schedule that Allows for Meaningful Review of These Materials by RBS and the Court, and Administratively Stay RBS's Time to Oppose Synopsys's Fee Petition Pending Disposition of this Motion................................................10

CONCLUSION....................................................................................................................... 11

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Calef v. Gillette Co.*
322 F.3d 75 (1st Cir. 2003) ................................................................................................... 9

*Carpet Super Mart, Inc. v. Benchmark Int'l Co. Sales Specialist, LLC*
No. 1:18CV398, 2020 U.S. Dist. LEXIS 139107 (M.D.N.C. Aug. 5, 2020) ........................ 4

*Chebotnikov v. LimoLink, Inc.*
150 F. Supp. 3d 128 (D. Mass. 2015) ................................................................................... 6

*Christiansburg Garment Co. v. EEOC*
434 U.S. 412 (1978) .............................................................................................................. 7

*Collins v. Dollar Tree Stores, Inc.*
No. 2:09CV486, 2010 WL 9499078 (E.D. Va. May 28, 2010) ............................................ 3

*Cont. Materials Processing, Inc. v. Kataleuna GmbH Catalysts*
222 F. Supp. 2d 733 (D. Md. 2002) ...................................................................................... 8

*Earthkind, LLC v. Lebermuth Co.*
No. 5:19-CV-00051-KDB-DCK, 2020 U.S. Dist. LEXIS 62933 (W.D.N.C. Apr. 9, 2020) ......... 6

*Emps.' Ret. Sys. of R.I. v. Williams Cos.*
889 F.3d 1153 (10th Cir. 2018) ............................................................................................ 9

*Feminist Majority Found. v. Hurley*
911 F.3d 674 (4th Cir. 2018) ................................................................................................ 9

*Gables Ins. Recovery v. United Healthcare Ins. Co.*
No. 13-21142, 2013 U.S. Dist. LEXIS 113376 (S.D. Fla. Aug. 12, 2013) ........................... 4

*Gabriel Techs. Corp. v. Qualcomm Inc.*
560 F. App'x 966 (Fed. Cir. 2014) ........................................................................................ 8

*Grede v. FCStone, LLC*
867 F.3d 767 (7th Cir. 2017) ................................................................................................ 9

*Hensley v. Eckerhart*
461 U.S. 424 (1983) ............................................................................................................ 10

*LaFleur v. Dollar Tree Stores, Inc.*
No. 2:12cv363, 2015 U.S. Dist. LEXIS 143950 (E.D. Va. Oct. 21, 2015) ......................... 10

*Lowery v. Stovall*
92 F.3d 219 (4th Cir. 1996) .................................................................................................. 6

*Mattison v. United States*
838 F. App'x 785 (4th Cir. 2021) .......................................................................................... 9

*Sarkis v. Ollie's Bargain Outlet*
560 F. App'x 27 (2d Cir. 2014) ............................................................................................. 9

*Silaev v. Swiss-Am. Trading Corp.*
732 F. App'x 574 (9th Cir. 2018) .......................................................................................... 9

*Sun Media Sys., Inc. v. KDSM, LLC*
587 F. Supp. 2d 1059 (S.D. Iowa 2008) ................................................................................ 8

*UEW Local 1139 v. Litton Microwave Cooking Prods.*
704 F.2d 393 (8th Cir. 1983) .............................................................................................. 10

*United States v. Cobb*
856 F. App'x 812 (11th Cir. 2021) ........................................................................................ 9

*United States v. Guzman*
995 F.2d 1068, 1993 WL 188378 (6th Cir. June 1, 1993) ..................................................... 9

*Valencell, Inc. v. Apple Inc.*
No. 5:16-CV-1-D, 2017 U.S. Dist. LEXIS 99971 (E.D.N.C. June 28, 2017) ............................... 5

*Zinkand v. Brown*
478 F.3d 634 (4th Cir. 2007) ................................................................................................ 6

## Other Authorities

Fed. R. Civ. P. 54(d)(2)(C) .......................................................................................................... 3
Fed. R. Civ. P. 54(d), 1993 Adv. Com. Notes ............................................................................ 11

**INTRODUCTION**

RBS asks the Court to simplify the proceedings on Synopsys's voluminous fee petition by first addressing the separate question of whether Synopsys is even entitled to attorneys' fees, before forcing the Court and RBS to navigate the arduous and – RBS believes – wholly unnecessary process of determining the reasonableness of the amount of fees sought. Synopsys agrees that the Court should seek to simplify the proceedings, but then inexplicably contends that bifurcation would have the opposite effect. Synopsys also argues that there is a dearth of authority in this Circuit for bifurcation. Both of these positions lack any factual basis or legal support.

The whole point of bifurcation is to simplify the proceedings. Nevertheless, Synopsys would have this Court simultaneously consider the issues of fee entitlement and fee amount. The former question is a legal question involving, among other things, contractual and statutory interpretation, along with a review of the arguments and evidence advanced in the underlying proceeding. This is a significant undertaking as the parties advanced complex factual and legal arguments regarding cyber security, vulnerability databases, and misappropriation of trade secrets over the course of approximately 400 filings. The latter is a fact intensive determination that will require the review of voluminous records—records that Synopsys *has not produced and refuses to produce*—as well as expensive expert analysis. There is no need for the parties or the Court to incur the costs of producing, reviewing, and briefing the latter question unless the Court determines the threshold issue of whether Synopsys is entitled to any fees at all (which RBS will demonstrate it is not). Bifurcating the briefing on these separate issues will promote efficiency and simplicity and limit costs for both parties and the Court. Granting RBS's motion is a matter of common sense.

Indeed, that is the reason the Federal Rules expressly authorize bifurcation of fee petitions. Federal courts across the country, *including in this Circuit*, routinely grant similar requests

1

precisely because of these practical benefits. Between the Federal Rules and those courts' opinions, there is ample legal support for RBS's request. By contrast, Synopsys has not cited a single case that would support its opposition to RBS's request for bifurcation. It is striking that Synopsys has filed a brief with *no legal support* while it simultaneously insinuates that *RBS* has acted in bad faith. In contrast to the ample legal support and pragmatic arguments put forth by RBS, Synopsys never identifies any prejudice that it would suffer from bifurcation presumably because none exists. Synopsys's proposed omnibus briefing would needlessly drive up litigation costs.

But in the event the Court does not grant RBS' motion for bifurcation, it should nonetheless order Synopsys to produce the invoices and other billing records necessary for RBS to fully review the reasonableness of Synopsys's fee petition. RBS and its expert must be permitted to review all fee-supporting documents to have a fair opportunity to evaluate Synopsys's fee petition. The case law on this is clear. While RBS does not yet know how voluminous these records would be, RBS anticipates that the volume will justify its request for an 8-week extension, particularly in light of the nearly six months Synopsys has had to hone its application, *see* ECF No. 443 at 3 fn. 2.

At a core level, each of RBS's requests—for bifurcation of the issues of fee entitlement and fee amount, production of the invoices supporting the latter request, an extension of time to file an opposition and an administrative stay of RBS's time to respond to Synopsys's non-bifurcated fees application, ECF Nos. 445-446, pending the Court's disposition of the instant motion—has a practical justification grounded in judicial efficiency and fundamental fairness. While RBS maintains that the best approach is to simply separate out the briefing on the two issues—entitlement and amount of fees—if the Court wishes to address all these issues in a one-step process, the Court should order a reasonable briefing schedule *after* Synopsys produces all

invoices and billing records that are required to support its enormous fee application and bill of costs, yet are conspicuously absent from its submission.

## ARGUMENT

**I.  The Court Should Bifurcate Briefing on the Issues of Fee Entitlement and Fee Amount.**

**A.  Bifurcation Is Supported by both Law and Logic.**

Synopsys incorrectly argues that bifurcation is "not an accepted practice in this Circuit." ECF No. 444 at 2, 5.  However, bifurcation is expressly endorsed by the Federal Rules which apply to all circuits, including this one. Rule 54(d) states that the district court "may decide the issues of liability for fees before receiving submissions on the value of the services." Fed. R. Civ. P. 54(d)(2)(C).  Under this Rule, the Court "is explicitly authorized to determine liability for fees before receiving submissions by the parties bearing on the amount of an award.  This option may be appropriate in actions in which the liability issue is doubtful and the evaluation issues are numerous and complex." *Id*., 1993 Adv. Com. Notes.  The Rule's "explicit" authorization of bifurcation defeats Synopsys's argument that RBS's request for bifurcation "is not supported by logic or law."  RBS can and will demonstrate that none of Synopsys's claims "arise out" of the Reseller Agreement and that there is no basis in law or fact to find that RBS acted in "bad faith" in connection with any of the claims at issue in this action.  It would be entirely proper for the Court to address these threshold issues *before* proceeding with a determination as to the amount of a fee award, if any.

Synopsys continues its baseless denial of this Circuit's endorsement of bifurcation by arguing that there is only one case in the Fourth Circuit involving bifurcation of fee determinations: *Collins v. Dollar Tree Stores, Inc.*, No. 2:09CV486, 2010 WL 9499078, at *5 (E.D. Va. May 28, 2010).  Synopsys is wrong. *See, e.g.*, *Carpet Super Mart, Inc. v. Benchmark Int'l Co. Sales*

*Specialist, LLC*, No. 1:18CV398, 2020 U.S. Dist. LEXIS 139107, at *7 (M.D.N.C. Aug. 5, 2020) ("Finding that fees should be awarded, but unable to determine if the requested fees are reasonable, the court defers its determination of a reasonable fee award and provides additional directions to the parties"). And Synopsys's other attempt to distinguish *Collins* is equally unpersuasive. Synopsys argues that the bifurcation in *Collins* was done by consent, but ignores that Synopsys has *de facto* consented to this process by denying RBS access to its invoices and other materials supporting its fee application and bill of costs. Without such materials, neither RBS nor this Court can properly evaluate the reasonableness of Synopsys's exorbitant multi-million dollar demand.

Moreover, RBS's request is supported by Rule 54(d)(2)(c) and numerous cases which RBS has cited. Synopsys, by contrast, has not cited a single contrary case that would support its position. Seemingly recognizing that there is no support for its position, Synopsys focuses on attacking the cases that RBS cites, such as *Gables Ins. Recovery v. United Healthcare Ins. Co.,* No. 13-21142, 2013 U.S. Dist. LEXIS 113376, at *5 (S.D. Fla. Aug. 12, 2013). That case (as well as the cases it collected) acknowledged the practical benefits of bifurcating the briefing on entitlement and amount of fees. Synopsys again attempts to distinguish those cases, arguing that they were decided based upon a Florida local rule not applicable here. But that local rule simply echoes the discretionary right to bifurcate fee petition briefing provided in Federal Rule 54(d)(2)(C). And Rule 54(d)(2)(C) governs the bifurcation issue before this Court.

### B. Bifurcation Is Practical.

Synopsys bizarrely argues that there is no practical benefit to bifurcating briefing on the entitlement of fees from the amount of fees. Not so. The issue of entitlement is wholly separate from the amount of fees. The former can be resolved as a matter of law. The latter will require fact-intensive review of Synopsys's billing records and invoices (which have not yet been

4

provided) and expert testimony. This will be expensive. There is no need for the parties to incur the costs associated with the fact-intensive inquiries needed to determine the amount of fees unless Synopsys has demonstrated that they are legally entitled to fees of any amount.

### C. Synopsys Is Not Entitled to Fees Under the Reseller Agreement, the DTSA or the VUTSA.

Although unnecessary here, Synopsys uses its opposition to bifurcation as a springboard to preview its arguments on the merits of entitlement. Those arguments are deeply flawed and, indeed, demonstrate why RBS's proposed approach is more pragmatic. Synopsys begins by admitting—as it must—that its claims did not arise under the Reseller Agreement, a concession that is fatal to its fee petition. Synopsys then attempts to save its fee petition by arguing that this case still arises under the Reseller Agreement on the ground that RBS raised defenses relating to the Reseller Agreement. This fails for two reasons.

First, Synopsys must show that the dispute—*i.e.* its claims—*arise under* the Reseller Agreement. It is not enough to show that *RBS's defenses* are *related to* the Reseller Agreement. The Reseller Agreement provides for an award of attorneys' fees and costs to a party who prevails on any claim "arising out of" the Reseller Agreement. Synopsys, of course, never pursued a claim against RBS under the Reseller Agreement, and repeatedly and emphatically stated throughout the lawsuit that the Reseller Agreement was irrelevant to its claims, *see infra*. It is similarly irrelevant that RBS's defenses related to the Reseller Agreement.

There is ample case law distinguishing between the higher standard of "arising out of" from the lower standard of "relating to" a contract. "[T]o fall within the scope of a an 'arising under' clause' the cause of action must be based on the contract itself." *Valencell, Inc. v. Apple Inc*., No. 5:16-CV-1-D, 2017 U.S. Dist. LEXIS 99971, at \*6 (E.D.N.C. June 28, 2017); *see also Earthkind, LLC v. Lebermuth Co.*, No. 5:19-CV-00051-KDB-DCK, 2020 U.S. Dist. LEXIS 62933, at \*12

5

(W.D.N.C. Apr. 9, 2020). The case Synopsys relies upon, *Chebotnikov v. LimoLink, Inc.*, 150 F. Supp. 3d 128, 131 (D. Mass. 2015), actually supports RBS's position. That case held that "[a]s a general matter, disputes 'arising under,' 'arising out of, or 'arising from' the terms of an agreement must have their inception in the agreement itself, instead of merely being related to the agreement or the relationship of the parties." Synopsys did not assert a claim for breach of contract. Nor did Synopsys seek to enforce any alleged contractual rights under the Reseller Agreement. Instead, Synopsys repeatedly distanced itself from Black Duck—the original signatory to the contract— and emphasized that its claims had nothing to do with the Reseller Agreement. The reason, of course, is that Synopsys's claims do not arise under the Reseller Agreement. As *Chebotnikov* notes, "the phrase 'arising out of' is construed by courts to be narrower than phrases such as 'with reference to,' 'relating to," or "in connection with.'" *Id.* at 131. This case is, at most, *related to* the Reseller Agreement but the claims did not *arise out of* the Reseller Agreement.

Second, Synopsys repeatedly argued that the Reseller Agreement was not at issue. Each time, the Court accepted and adopted Synopsys's position. *See, e.g.,* ECF Nos. 24 at 11, 42 18:3–12, 47 at 9, and 74 at 11. Because Synopsys was successful in persuading the Court to adopt its position, Synopsys is judicially estopped from reversing course and seeking fees under the Reseller Agreement. *Zinkand v. Brown*, 478 F.3d 634, 638 (4th Cir. 2007). The Court's adoption of Synopsys's position precludes Synopsys from now taking an inconsistent position that this dispute somehow arose under the Reseller Agreement. *See, e.g.*, *Lowery v. Stovall*, 92 F.3d 219, 223 (4th Cir. 1996) ("Judicial estoppel precludes a party from adopting a position that is inconsistent with a stance taken in prior litigation. The purpose of the doctrine is to prevent a party from playing fast and loose with the courts, and to protect the essential integrity of the judicial process").

6

Further, Synopsys concedes that it is not entitled to fees under the Defend Trade Secrets Act ("DTSA") and the Virginia Uniform Trade Secrets Act ("VUTSA") unless it shows that RBS litigated its trade secret claims in bad faith. (*See* ECF No. 443 at 5; ECF No. 444 at 8.) Yet Synopsys never directly accuses RBS of bad faith. Instead, it adopts a new standard, expressed nowhere in the federal caselaw, that RBS's litigation positions were "obviously deficient." (ECF No. 444 at 9.) Synopsys argues, in other words, that RBS litigated in bad faith because it lost the case. That is not the standard. When dealing with accusations of bad faith, "it is important that a district court resist the understandable temptation to engage in *post hoc* reasoning by concluding that, because a [party] did not ultimately prevail, his action must have been unreasonable or without foundation." *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 421–22 (1978) (applying Title VII bad-faith standard, which provides for fees in frivolous, unreasonable, foundationless, or bad-faith cases). Synopsys's argument violates this Supreme Court guidance.

Even under Synopsys's made-up "obviously deficient" standard, Synopsys still is not entitled to fees. Contrary to Synopsys's contention, RBS did not "fail[] to [] adequately identify its trade secrets." (ECF No. 444 at 8.) That is *not* what this Court held on summary judgment, and it is *not* what the Fourth Circuit held on appeal. Similarly, neither this Court nor the Fourth Circuit held that RBS "failed to . . . produce any evidence of misappropriation." (*Id.*) Nor did RBS "fail[] to . . . demonstrate that it had taken reasonable measures to protect" its trade secrets. (*Id.*) The Fourth Circuit expressly declined to rule on that issue. (ECF No. 439 at 22 n.8.) And RBS did not "fail[] to . . . produce any evidence" that its trade secrets "had independent economic value." (ECF No. 444 at 8.) The Fourth Circuit held not that RBS produced *no* evidence, but that the evidence RBS *did* produce was not "sufficient to satisfy that part of the statutory definition of a 'trade secret.'" (ECF No. 439 at 30.)

These facts distinguish each of Synopsys's cited cases: *Gabriel Techs.*, *Sun Media*, and *Contract Materials*. (*See* ECF No. 444 at 8.) The *Gabriel Techs.* plaintiffs litigated in bad faith because, among other reasons, they pursued their trade secret claims even though "it became clear" from "an early point in the litigation" that the claims "were time-barred." *Gabriel Techs. Corp. v. Qualcomm Inc.*, 560 F. App'x 966, 974 (Fed. Cir. 2014). The plaintiffs there also "made seven failed attempts to articulate their trade secrets," *id.* at 973, but this Court did not make this finding with respect to RBS here. The *Sun Media* plaintiff litigated in bad faith primarily because it argued that a "generic confidentiality clause" in a contract "was sufficient to put [d]efendants on notice that [plaintiff] claimed trade secret rights in everything from choosing door prizes to printing coupons." *Sun Media Sys., Inc. v. KDSM, LLC*, 587 F. Supp. 2d 1059, 1074 (S.D. Iowa 2008). The plaintiff's lack of independent-economic-value evidence was only one of *six* "other deficiencies" that the court found. *Id.* And in *Contract Materials*, the plaintiff litigated in bad faith because it "fabricated" confidentiality agreements that "utter[ly] lack[ed]" both "legal support" and "factual coherence." *Cont. Materials Processing, Inc. v. Kataleuna GmbH Catalysts*, 222 F. Supp. 2d 733, 746 (D. Md. 2002). Those cases are entirely inapposite. RBS lost the appeal on the narrow legal issue of whether its evidence of economic value "satisf[ied] . . . the statutory definition of a 'trade secret'" (ECF No. 439 at 30), which is not a sign of bad faith. *See Christiansburg*, 434 U.S. at 421–22.

In the same vein, Synopsys is wrong to characterize the Fourth Circuit's opinion as "confirmation" that any claims were "obviously deficient." (ECF No. 444 at 9.) From the 30+ page opinion, Synopsys misleadingly plucks out the words "misdirection" and "sleight-of-hand" as supposed words of "confirmation." (*Id.*) (citing ECF No. 439 at 25–27 & n.10.) However, the author of the Fourth Circuit's opinion, Judge Agee, has previously used those words to describe

8

reasoning with which he respectfully disagrees. For instance, Judge Agee has previously authored a dissenting opinion that criticized the majority opinion's reasoning as "misdirection" and "sleight of hand." *Feminist Majority Found. v. Hurley*, 911 F.3d 674, 718–19 (4th Cir. 2018) (Agee, J., dissenting in part and concurring in part). Surely, he was not accusing his colleagues in the majority of bad faith there. Neither was he accusing RBS of bad faith here.

Synopsys also is wrong to deny that the Fourth Circuit's opinion was "narrow." (ECF No. 444 at 9.) Synopsys concedes that the Fourth Circuit did not adopt Synopsys's arguments against (i) RBS's reasonable efforts to maintain the secrecy of trade secrets, (ii) RBS's ability to analyze the value of trade secrets in groups, (iii) RBS's trade secrets not being generally known or readily ascertainable, and (iv) Synopsys's misappropriation of RBS's trade secrets. (*See* ECF No. 443 at 6; ECF No. 444 at 9.) But Synopsys tries to write off the Fourth Circuit's silence on these issues as "standard appellate practice." (ECF No. 444 at 9.) That is an oversimplification. Though appellate courts need not address every issue on appeal, they often do. *See, e.g.*, *United States v. Cobb*, 856 F. App'x 812, 814 (11th Cir. 2021) ("[W]e affirm on two grounds."); *Mattison v. United States*, 838 F. App'x 785, 785 at n.1 (4th Cir. 2021) ("[T]he [district] court provided several additional grounds for dismissal, and we affirm on those alternate grounds."); *Emps.' Ret. Sys. of R.I. v. Williams Cos.*, 889 F.3d 1153, 1162 (10th Cir. 2018) ("[W]e affirm on three grounds[.]"); *Silaev v. Swiss-Am. Trading Corp.*, 732 F. App'x 574, 576 (9th Cir. 2018) ("We affirm on multiple grounds."); *Grede v. FCStone, LLC*, 867 F.3d 767, 770 (7th Cir. 2017) ("[W]e affirm on two independent grounds."); *Sarkis v. Ollie's Bargain Outlet*, 560 F. App'x 27, 30 (2d Cir. 2014) ("We affirm on [] two grounds."); *Calef v. Gillette Co.*, 322 F.3d 75, 77 (1st Cir. 2003) ("We affirm on two grounds[.]"); *United States v. Guzman*, 995 F.2d 1068, 1993 WL 188378, at *1 (6th Cir. June 1, 1993) ("We . . . affirm on two grounds."); *UEW Local 1139 v. Litton Microwave Cooking*

9

*Prods.*, 704 F.2d 393, 396 (8th Cir. 1983) ("We affirm on all three grounds."). The Fourth Circuit's decision not to address these issues here confirms that its opinion was narrow and that there very much exists a "question regarding Synopsys' entitlement to fees." (ECF No. 444 at 10.)

**II.  Should the Court Refuse to Bifurcate, It Should Order Synopsys to Produce Its Invoices and Billing Records, Adopt a Briefing Schedule that Allows for Meaningful Review of These Materials by RBS and the Court, and Administratively Stay RBS's Time to Oppose Synopsys's Fee Petition Pending Disposition of this Motion.**

It is well-settled under the lodestar analysis that "the fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983).  To carry the burden of proof on the reasonable number of hours, the fee applicant must "submit evidence supporting the hours worked and rates claimed.  Where the documentation of hours is inadequate, the district court may reduce the award accordingly." *Id.* at 434.  Further, "the party who seeks [a fee award] must keep records in sufficient detail that a neutral judge can make a fair evaluation of the time expended, the nature and need for the service, and the reasonable fees to be allowed." *Id*. at 441 (Burger, C.J. concurring).  Generally, then, the Court reviews the actual invoices and billing records, not summaries, abstracts, or totals, and the party opposing the fee application is permitted to analyze and critique that information and documentation. *See LaFleur v. Dollar Tree Stores, Inc.*, No. 2:12cv363, 2015 U.S. Dist. LEXIS 143950, at *10 (E.D. Va. Oct. 21, 2015) (finding that plaintiff's "lack of billing records and questionable hourly billing rates" rendered the court unable to calculate a lodestar figure).

Here, Synopsys unilaterally has withheld its invoices and billing records, and instead proposes only to reveal them to the Court *in camera*—but not to RBS.  Such an approach is unjust and inefficient, and utterly defeats RBS's right to review the supporting documents and mount a meaningful opposition to any fee application, *i.e.*, in the event Synopsys can even meet its

10

threshold burden of establishing any entitlement to a fee award. Absent these supporting documents, neither the Court nor RBS can discern whether Synopsys exercised reasonable and proper billing judgment. *See, e.g.*, ECF No. 443 at 10-11 (raising key questions such as whether Synopsys (i) included in its fee petition hours that were not "reasonably expended" (ii) overstaffed the case—or employed lawyers on tasks not commensurate with their billing rates, (iii) included any redundant, excessive or unnecessary work and (iv) engaged in improper block-billing). If Synopsys can demonstrate an entitlement to fees (which RBS believes it cannot), then Synopsys bears the burden of proving that *all* the fees it is seeking are reasonable. This is impossible to measure or challenge without Synopsys's invoices and billing records.

The Court has explicit authority under Rule 54(d) "to establish procedures facilitating the efficient and fair resolution of fee claims." Fed. R. Civ. P. 54, 1993 Adv. Com. Notes. RBS respectfully submits that, if the Court does not bifurcate the fee application, it should at least order Synopsys to produce its invoices for RBS's review and allow RBS a sufficient period to review and analyze that documentation. Here, RBS should be allowed eight weeks to file its opposition to Synopsys's fee petition —or at minimum the five weeks proposed by Synopsys—after Synopsys produces its documentation. This extension is reasonable in light of the anticipated volume of documents and the need for RBS's counsel to review those documents alongside its expert and formulate a response. Synopsys has not identified any prejudice that it would suffer from this reasonable extension and, indeed, there is none. And RBS respectfully requests that the Court issue an administrative stay of RBS's time to oppose Synopsys's non-bifurcated fees application, pending disposition of the instant motion.

## **CONCLUSION**

It is respectfully requested that the Court should bifurcate briefing on the *availability* of

fees and costs from any briefing on the *amount* of fees and costs at issue. If the Court nonetheless decides to simultaneously rule on the fee entitlement and fee amount issues, then it should extend RBS's opposition deadline to eight weeks after Synopsys produces the invoices and other documents underlying its fee petition and bill of costs. And it is respectfully requested that the Court issue an administrative stay of RBS's time to oppose Synopsys's non-bifurcated fees application, pending disposition of the instant motion.

                      Respectfully submitted,

Dated: July 31, 2023         */s/ C. Dewayne Lonas*
                      C. Dewayne Lonas (VA Bar No. 44298)
                      Stewart R. Pollock (VA Bar No. 92466)
                      MORAN REEVES CONN PC
                      1211 East Cary Street
                      Richmond, VA 23219
                      Tel: (804) 421-6250
                      Fax: (804) 421-6251
                      dlonas@moranreevesconn.com
                      spollock@moranreevesconn.com

                      Kevin W. Kirsch (admitted *pro hac vice*)

                      Michael S. Gordon (admitted *pro hac vice*)
                      Andrew E. Samuels (admitted *pro hac vice*)
                      BAKER & HOSTETLER LLP
                      200 Civic Center Drive, Suite 1200
                      Columbus, OH 43215
                      Tel: (614) 228-1541
                      Fax: (614) 462-2616
                      kkirsch@bakerlaw.com
                      cwiech@bakerlaw.com
                      mgordon@bakerlaw.com
                      asamuels@bakerlaw.com

                      *Attorneys for Defendant Risk Based Security, Inc.*

**CERTIFICATE OF SERVICE**

I certify that on July 31, 2023, I electronically filed the foregoing DEFENDANT RISK BASED SECURITY, INC.'S REPLY BRIEF IN SUPPORT OF MOTION TO BIFURCATE BRIEFING ON SYNOPSYS'S FEE PETITION with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to all counsel of record.

*/s/ C. Dewayne Lonas*
C. Dewayne Lonas (VA Bar No. 44298)
Stewart R. Pollock (VA Bar No. 92466)
MORAN REEVES CONN PC
1211 East Cary Street
Richmond, VA 23219
Tel: (804) 421-6250
Fax: (804) 421-6251
dlonas@moranreevesconn.com
spollock@moranreevesconn.com

*Attorneys for Defendant Risk Based Security, Inc.*
